**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| ROBERTA DILALLO, MAURICE STRADER, and LUIS TORRES, on behalf of plaintiffs and the class members described below, <br><br> Plaintiff, <br><br> vs. <br><br> MILLER AND STEENO, P.C., RONALD C. MILLER, LVNV FUNDING, LLC, RESURGENT CAPITAL SERVICES, L.P., and ALEGIS GROUP LLC, <br><br> Defendants. | No. 16-cv-51 <br><br> Honorable Judge Andrea R. Wood <br><br> Honorable Magistrate Judge Cole |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF FINAL
APPROVAL OF CLASS ACTION SETTLEMENT AGREEMENT**

Plaintiffs Roberta Dilallo, Maurice Strader and Luis Torres ("Plaintiffs"), individually and as representatives of the Class of similarly situated persons, by Class Counsel, Edelman, Combs, Latturner & Goodwin, LLC, and the Warner Law Firm, LLC, respectfully submit the following Memorandum in Support of Final Approval of the Class Action Settlement Agreement ("Agreement") which was preliminarily approved by the Court on August 22, 2017[1]. (Dkt. No. 116)

---

[1] The Settlement Agreement was preliminarily approved by Hon. Judge Samuel Der-Yghiayan. The case was subsequently transferred to this Court pursuant to the Executive Committee Order of February 7, 2018. (Dkt. No. 122)

1

**I.      SUMMARY OF NOTICE PROVIDED TO CLASS**

The Court is advised that on or about November 9, 2011, subsequent to the entry of the preliminary approval order, and after removing 3 duplicate entries from the class list, notice of the settlement of this action was mailed to 449 individuals identified as members of the Class. (Appendix 1, Affidavit of Bailey Hughes). Prior to mailing the notice to the class members, the Class Administrator processed the list through Coding Accuracy Support System (CASS) and the National Change of Address database (NCOA) of the U.S. Postal Service. *Id.* CASS is used to verify the address is correctly formatted for delivery and correct zip codes. *Id.* NCOA provides current address information, if available, for people who have moved and also provides information regarding deliverability. *Id.* The notices were mailed via First Class mail, postage prepaid, with Forwarding Service Requested. *Id.*

The U.S. Post Office returned 2 notices with forwarding addresses, to which those notices were forwarded, and 50 notices as "undeliverable" with no forwarding address. *Id.* The deadline for requests for exclusions and objections was January 10, 2018. (Dkt. No. 121) As of March 5, 2018, no objections or requests for exclusions were received by the Class Administrator. (Appendix 1, Affidavit).

The parties agreed that sending checks to "undeliverable" addresses was a waste of resources and could increase the likelihood of fraud. As such, the parties agreed that it is in the best interest of the class to distribute the Class Settlement Fund among the 399 individuals with mailing addresses, rather than issuing the class member's checks to the designated cy pres.

Based on the Class Fund, as set forth in more detail below, and the number of Participating Class Members with deliverable addresses, each of the 399 class members with deliverable addresses, is entitled to receive approximately $187.96.

## II. OVERVIEW OF THE LITIGATION PRECEDING SETTLEMENT

Plaintiffs filed suit in the United States District Court for the Northern District of Illinois in two separate cases which were consolidated into *Roberta Dilallo v. Miller and Steeno P.C., LVNV Funding LLC*, Case No. 16-C-51, for purposes of settlement (the "Litigation"). Plaintiffs allege that Defendants used the name of a another entity, Arrow Financial Services, LLC, in seeking to collect a debt from Plaintiffs and the putative class members, in violation of Section 1692e(14) of the Fair Debt Collection Practices Act, ("FDCPA"), 15 U.S.C. § 1692 et al. Defendants deny liability to Plaintiffs and the class.

The parties were successful in reaching an agreement to settle the case on a class-wide basis. The parties' agreement was preliminarily approved by the Court on August 22, 2017. Defendants served the notice required by the Class Action Fairness Act on August 24, 2017. As demonstrated below, the parties' Agreement is now ripe for this Court's consideration and final approval.

## III. TERMS OF THE SETTLEMENT

The parties' agreement covers a settlement class of approximately 449 persons all of whom are "persons from whom Miller and Steen, P.C. attempted to collect a debt, where the debt was owned by LVNV Funding, and Arrow Financial was identified as the creditor and/or owner of the debt, for a time period from January 4, 2015, to January 31, 2017."

Defendants have agreed to provide the following relief to Plaintiffs and the Class.

<u>Relief to Plaintiffs</u>. Subject to Court approval, Defendants agreed to pay $2,500.00

3

to each Plaintiff as their damages, for their claims, and as an incentive award for bringing the claims on behalf of the Class.

Class Recovery. Defendants agreed to pay $75,000.00 to create a Class Fund, which shall be distributed pro rata to all Class Members with valid addresses, who did not opt out of the settlement.

Costs. Defendants agreed to pay all costs associated with the notice under this class settlement and the costs of administering the class settlement. This amount was paid separate from the Class Fund by Defendants.

If any of the settlement checks to the Class are not cashed by the Void Date, said funds (after deduction of any stop payment charges on the uncashed checks) will be donated, in equal shares, to the Chicago Law and Education Foundation and the Catholic Charities as a cy pres award, within 30 (thirty) days following the last Void Date of the settlement checks.

The agreement further provided that, subject to this Court's approval, Defendants would pay Edelman, Combs, Latturner & Goodwin LLC, and the Warner Law Firm, LLC, for their service as class counsel, $77,000.00 in attorney's fees and costs.

## IV. THE ADMINISTRATION OF THIS CLASS ACTION SETTLEMENT

### A. The Preliminary Approval Order.

On August 22, 2017, the Court entered an order granting preliminary approval of the Agreement reached between the parties. (Dkt. No. 116) In the Preliminary Approval Order ("Order"), the Court established a procedural framework for the final approval of the settlement. The Order required the parties to cause notice to be mailed to the members of the above defined Class, set deadlines and procedures for the submission of claim forms, requests for exclusion and objections to the settlement, and set a fairness hearing for March 15, 2018.

### B. The Sending of Class Notice.

On November 9, 2017, Defendants caused notice of the settlement to be sent via U.S. Mail to the 449 individuals who were identified as members of the Class. Of this number, the U.S. Post Office returned 2 notices with forwarding addresses, to which those notices were then forwarded. The U.S. Post Office returned 50 of the notices as "undeliverable." The Class Administrator took specific steps to ensure proper delivery of the notices, confirm addresses, and attempt to locate class members. (Appendix 1, Affidavit)

As of March 8, 2018, no requests for exclusions or objections were received by the Class Administrator. *Id.*

### C. No Objections Received.

No objections were filed or received by the deadline or afterwards. The lack of objections should be viewed as an endorsement of the settlement by the Class.

## V. THE COURT SHOULD GRANT FINAL APPROVAL TO THE SETTLEMENT.

The settlement satisfies all the requirements of Rule 23.

### A. Rule 23(a)(1) - The Settlement Class Is So Numerous That Joinder Of All Members Is Impracticable.

As determined through the parties' discovery, there are 449 individuals who met the Class definition, and who were subsequently sent notice of the settlement, pursuant to the Court's order. The United States Court of Appeals for the Seventh Circuit has recognized that as few as 40 class members are sufficient to satisfy the "numerosity" requirement of Rule 23(a)(1). *Swanson v. American Consumer Industries, Inc.*, 415 F.2d 1326, 1333 (7th Cir. 1969); *see also Newberg on Class Actions*, 3rd ed. Sec. 3.05, pp. 3-25 ("The difficulty in joining as few as 40 class members

5

should raise a presumption that joinder is impracticable, and the plaintiff whose class is that large or larger should meet the test of Rule 23(a)(1) on that fact alone."). The number of class members in this case plainly satisfies the numerosity requirement of Rule 23(a)(1).

    **B.    Rule 23(a)(2) - The Claims Of The Settlement Class Arise From Common Questions Of Law And Fact.**

The "commonality" requirement of Rule 23(a)(2) is usually satisfied where the class members' claims arise from a common nucleus of operative fact. *Rosario v. Livaditis*, 963 F.2d 1013 (7th Cir. 1992). Rule 23(a)(2) requires only that the class members share at least one question of fact or law in common. *Kreuzfeld A.G. v. Carnehammer*, 138 F.R.D. 594, 599 (S.D.Fla. 1991) (the issue of commonality "turns on whether there exists at least one issue affecting all or a significant number of proposed class members"). In the present case, the essential fact that links all class members is Defendants standard practice of using the name of a another entity, Arrow Financial Services, LLC, in their attempt to collect debts from the members of the class.

    **C.    Rule 23(a)(3) - Named Plaintiffs' Claims are Typical Of the Claims Of The Settlement Class.**

The "typicality" requirement of Rule 23(a)(3) is satisfied for many of the same reasons that the "commonality" requirement of Rule 23(a)(3) is met. *De La Fuente v. Stokley-Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1993)("A plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory"); *see also Kornberg v. Carnival Cruse Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (the typicality requirement is satisfied where the "claims or defenses of the class and the class representative arise from the same event or practice and are based upon the same legal theory").

6

In the present case, typicality is inherent in the class definition. By definition, the members of the class were subjected to the same practices as the Plaintiffs, and thus suffered the same violation of the FDCPA that Plaintiffs suffered.

### D. Rule 23(a)(4) - The Named Plaintiffs and Class Counsel Will Fairly And Adequately Protect The Interests Of The Settlement Class.

The determination that the "representative parties will fairly and adequately protect the interests of the class" as required by Rule 23(a)(4) involve two considerations: (1) whether the Plaintiff's attorneys are properly qualified and experienced to conduct the litigation; and (2) whether the Plaintiff has any interests antagonistic to the class. *General Tel. Co. v. Falcon*, 102 S.Ct. 2364, 2370, n.13 (1982); *Retired Chicago Policy Ass'n v. City of Chicago*, 7 F.3d 584, 598 (7th Cir. 1993).

As set forth in the Declarations of Class Counsel, attached hereto as Appendices 2 and 3, Plaintiffs' counsel is experienced in class action litigation. In addition, Plaintiffs have no interests in conflict with the Class. Therefore, the named Plaintiffs and their counsel satisfy the adequacy of representation requirement of Rule 23(a)(4).

### E. The Settlement Class May Be Certified Pursuant to Rule 23(b)(3).

Class certification is appropriate under Rule 23(b)(3) where: (1) common questions of law or fact predominate over individual questions; and where (2) a class action represents a superior method for the fair and efficient adjudication of the controversy. Both of these requirements are satisfied in the present case.

#### 1. Common questions predominate over individual issues.

In order for common questions of law or fact to predominate over individual issues for purposes of Rule 23(b)(3), common issues must constitute a significant part of the

individual cases. *Jenkins v. Raymark Industries, Inc.*, 782 F.2d 468, 472 (5th Cir. 1986). Courts "generally focus on the liability issues in deciding whether the predominance requirement is met, and if the liability issue is common to the Class, common questions are held to predominate." *In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528, 534 (S.D.Fla. 1986); *see also Dura-Built Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 89 (S.D.N.Y. 1981). In the present case, a common issue relating to the lawfulness of Defendants's practice of using the name of a another entity, Arrow Financial Services, LLC, predominates over individual issues, if any, as required by Rule 23(b)(3).

### 2. A Class Action is Superior to Other Methods of Resolving This Matter.

For many of the reasons set forth above, a class action is the superior method to resolve the claims presented in this action. In determining the superiority of a class action, the Court must consider the best available method of resolving the controversy in keeping with the goal of judicial economy. In reaching this determination, the Court should consider the inability of the uninformed to bring their claims and the improbability that large numbers of class members would possess the initiative to litigate individually. *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 (7th Cir. 1974). In *Phillips Petroleum Company v. Shutts*, 472 U.S. 797, 809, 105 S.Ct. 2965 (1985), the Supreme Court recognized that in cases where the class members' claims are too many or too small to litigate on an individual basis, the Court should certify the case as a class action under Rule 23(b)(3).

Given the large number of individual lawsuits that would be required if a class were not certified, a class action presents a superior method to fairly and efficiently adjudicate all of the claims of the class in this case, within the meaning of Rule 23(b)(3). To the extent that any Class

8

members wished to pursue any such individual claim, they were free to opt-out of the settlement under Rule 23(b)(3). In the present case, no class member elected to exclude themselves from the settlement.

### F. The Standard For Granting Final Approval To The Class Action Settlement.

In *Amchem Productions, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231 (1997), the United States Supreme Court explained that, before approving a class action settlement, the District Court must first be satisfied that the elements of Rule 23(a) and 23(b) have been met. *Id.* at 621, 117 S.Ct. at 2248.

Once the Court has determined that the requirements of Rule 23(a) and 23(b) have been met, the Court must then determine whether Rule 23(e) has been satisfied by determining whether the settlement is fair, reasonable, and adequate. *General Electric Capital Corporation v. Lease Resolution Corp.*, 128 F.3d 1074, 1082 (7th Cir. 1997). The Court considers the following six factors in making this determination:

1. The strength of the plaintiff's case on the merits measured against the terms of the settlement;

2. The complexity, length, and expense of continued litigation;

3. The amount of opposition to the settlement among class members;

4. The presence of collusion in gaining a settlement;

5. The stage of the proceedings; and

6. The amount of discovery completed.

*Id.* (citing *Donovan v. Estate of Fitzsimmons*, 778 F.2d 298, 308 (7th Cir. 1985)). The class action settlement in the present case satisfies each of the factors outlined in *GE Capital*.

While Plaintiffs believes they would have prevailed at trial on the merits, there are certain risks associated with further litigation. Even if Plaintiffs prevailed on the issue of whether Defendants's conduct violated the FDCPA, it is possible that Defendants would have been able to prove that its violation was a bona fide error notwithstanding procedures in place to avoid such violations.

The compromise provides that each class member whose does not elect to exclude themself from the settlement will receive a *pro rata* cash payment from the settlement fund established by Defendants. Based on the number of Participating Class Members with valid addresses, the class members will receive approximately $187.96. The FDCPA caps a class recovery at 1% of the debt collector's net worth. Based upon the financial information Defendants provided to Class Counsel and the nature of the claims alleged, the amount that each class member will receive is fair and reasonable, and would be in the best interest of the Class members. Thus, the arguable strength of the Class members' claims compare favorably to the terms of the settlement, satisfying the first of the *GE Capital* factors.

In addition, the settlement is warranted by the complexity, length and expense of continued litigation, satisfying the second *GE Capital* factor. The settlement easily satisfies the third *GE Capital* factor because none of the 449 class members elected to exclude themselves from the settlement and no class members objected to the terms of the settlement.

As evidence of the lack of any collusion, the above-described settlement amount, to Plaintiffs and Class counsel compare favorably to the direct benefits to the Class, thereby satisfying the fourth *GE Capital* factor.

Finally, the fifth and sixth *GE Capital* factors also support the final approval of this

settlement in light of the stage of pre-trial proceedings and the discovery completed to date. These actions were brought early 2016. Before the cases were consolidated, both plaintiffs briefed motions to dismiss. Plaintiff Dilallo defeated the defendants' motion to dismiss and also successfully briefed a motion to reconsider regarding the class claims. The Plaintiffs also engaged in written discovery in their respective cases. Following the Court's rulings, Defendants indicated a willingness to participate in settlement discussions.

The parties engaged in lengthy settlement discussions including an all day settlement conference with the Magistrate Judge which resulted in an agreement to settle the case on a class-wide basis. Given the stage of proceedings and the investigation and discovery completed, the proposed settlement satisfies the fifth and sixth *GE Capital* factors.

## VI. THE ATTORNEY'S FEES AND COSTS ARE REASONABLE

Pursuant to the Agreement, and subject to this Court's approval, the Defendants will pay attorney's fees and costs not to exceed $77,000.00 which represents approximately 20% less than Class Counsel's current time and expense which is over $93,000.00. This amount does not include the additional time and expense which will be incurred in preparing for and presenting the final approval of the settlement or the additional time and expense incurred in addressing class member inquiries and administration of the payments to the Class. Class notice and administration was paid by Defendants separate and apart from the Settlement fund in compliance with Seventh Circuit precedent. *Redman v. RadioShack Corp.*, 768 F.3d 622, 630 (7th Cir. 2014) and *Pearson v. NBTY, Inc.*, 772 F.3d 778, 784 (7th Cir. 214). Class Counsel requests approval of the Court of attorney's fees and costs of that amount.

The Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq. ("FDCPA") allows Class

11

Counsel to recover for its work in this action. Section 1692k provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person" is liable, inter alia, for "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. §1692k(a)(3). To date, Class Counsel has incurred more than $93,000 in fees and costs. As set forth in the Declarations of Class Counsel (Appendices 2 and 3), Plaintiffs' counsel include experienced class action attorneys, all of whom contributed their skills and expended their resources in a coordinated effort that resulted in the settlement of this matter.

In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, i.e., the "market price." *See, e.g., Blum v. Stenson*, 465 U.S.886 at 895; *McDonald v. Armontrout*, 860 F.2d 1456, 1459 (8th Cir. 1988) ("'in most cases, billing rates reflect market rates – they provide an efficient and fair short-cut for determining the market rate'"); *Spencer v. Comserv Corp.*, 1986 WL 15155, Fed.Sec.L.Rep. ¶93, 124, at 95, 532 (D.Minn. Dec. 30, 1986) ("compensating a nationally recognized securities class action attorney at his hourly rate is entirely appropriate."); *Lindy Bros.Builders, Inc. v. American Radiator & Standard Sanitary Corp.*, 487 F.2d 161, 167 (3rd Cir. 1973) ("The value of an attorney's time generally is reflected in his normal billing rate."). The hourly rates of Plaintiffs' counsel and a detailed listing of Class Counsel's lodestar are set forth in Appendices 2 and 3 and their attached Exhibits.

The actual lodestar and expenses incurred by the firm Edelman, Combs Latturner & Goodwin, LLC, as of March 12, 2018 was $52,252.00 (fees) and $897.47 (costs), for a total of $53,149.47 (*See* Exhibit G to the Declaration of Daniel A. Edelman, attached as Appendix 2). The

12

actual lodestar and expenses incurred by the Warner Law Firm, as of March 8, 2018 was $39,450.00 (fees) and $505.00 (costs), for a total of $39,955.00 (*See* Exhibit A to the Declaration of Curtis C. Warner, attached as Appendix 3). This amount, already in excess of the agreed upon maximum recovery, does not include time spent preparing for, and appearing at the fairness hearing plus the continuing calls from class members, inquiring about the settlement checks. Accordingly, the request for $77,000.00 is fair and reasonable, and Plaintiffs requests that the Court approve that amount.

The settlement in this case also complies with recent case law from the Seventh Circuit concerning class action awards, and is consistent with the principles set forth in *Pearson v. NBTY, Inc*., 772 F.3d 778 (7th Cir. 2014), *Redman v. RadioShack Corp*., 768 F.3d 622 (7th Cir. 2014) and *Eubank v. Pella Corp*., 753 F.3d 718 (7th Cir. 2014). First, the award to the class is distinct and separate from the attorneys' fees in this case. The FDCPA is a fee shifting statute and the fees being awarded to class would not come from a class fund but rather by payment directly from Defendants, pursuant to the fee shifting provision of the FDCPA as set out in Section 1692k(a)(3). Thus, the size of the attorneys' fees award does not affect the award to the class, unlike cases such as *Pearson*, *Redman* and *Eubank* where payment of the attorneys' fees affected the total payment to the class.

Second, in contrast to *Pearson*, *Redman* and *Eubank* where the potential award to the class was not capped by statute and the attorneys presumably would have achieved a larger class fund by potentially reducing attorneys' fees, here, even if the class were to proceed to trial it would not receive more than 1% of the debt collector's net worth. Plaintiffs further submit that the class notice gives fair notice to the classes, the terms of the settlement, and the ways in which class members can

participate (or not) in the settlement, thus satisfying the requirements of Fed. R. Civ. P. 23, and of due process.

In light of the results achieved for the class members, and the length of time and difficulty in achieving those results, an award of $77,000.00 to Class Counsel is fair and reasonable.

## VII. CONCLUSION

For all the reasons set forth above, Plaintiffs individually, and as representatives of the Class of similarly situated persons, by Class Counsel, request this Court grant final approval of the Agreement.

Respectfully submitted,

s/Cassandra P. Miller
Cassandra P. Miller


Daniel A. Edelman (courtecl@edcombs.com, dedelman@edcombs.com)
Cassandra P. Miller (cmiller@edcombs.com)
EDELMAN, COMBS, LATTURNER & GOODWIN, LLC
20 S. Clark St., Suite 1500
Chicago, IL 60603
(312) 739-4200
(312) 419-0379 (FAX)

and

Curtis C. Warner
WARNER LAW FIRM, LLC
350 S. Northwest Hwy., Ste 300
Park Ridge, IL 60068
(847) 701-5290
cwarner@warnerlawllc.com

## **CERTIFICATE OF SERVICE**

        I, Cassandra P. Miller, hereby certify that on March 12, 2018, I caused to be filed the foregoing documents via the CM/ECF System, which sent notification of such filing to the following parties via electronic mail:

Joseph Paul Kincaid
Emily Jean Fitzgerald
James M. Gale
Swanson, Martin & Bell
330 North Wabash
Suite 3300
Chicago, IL 60611
(312) 321-9100
Email: jkincaid@smbtrials.com
       efitzgerald@smbtrials.com
       jgale@smbtrials.com

Michael P. Steeno
Miller And Steeno, PC
11970 Borman Dr. Ste. 250
St. Louis, MO 63146
(314) 726-1400
Email: msteeno@millersteeno.com

Nabil G. Foster
Lindsey A.L. Conley
Hinshaw & Culbertson LLP
222 North LaSalle Street
Suite 300
Chicago, IL 60601
(312) 704-3000
Email: nfoster@hinshawlaw.com
       lconley@hinshawlaw.com

Curtis Charles Warner
Warner Law Firm, LLC
350 S. Northwest HWY, Ste. 300
Park Ridge, IL 60068
(847) 701-5290
Email: cwarner@warnerlawllc.com

                                            s/Cassandra P. Miller
                                            Cassandra P. Miller